IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:11-cv-02765-PAB-BNB

DALIP BASANTI,

      Plaintiff,

      vs.

JEFFREY METCALF, M.D.,
JASON ROZESKI, M.D.,
PLATTE VALLEY MEDICAL CENTER, and
THE UNITED STATES OF AMERICA,

      Defendants.

---

## *SECOND AMENDED* FINAL PRETRIAL ORDER

---

## 1.DATE AND APPEARANCES

    The Final Pretrial Conference was held on October 3, 2013, at 2:00 p.m.  Attorneys for

the parties are:

Attorneys for Plaintiff Dalip Basanti:
Natalie Brown
DezaRae D. LaCrue
Leventhal, Brown & Puga, P.C.
950 S. Cherry Street, Suite 600
Denver, CO  80246
Telephone:  303-759-9945

Anthony Viorst
The Viorst Law Offices, P.C.
950 S. Cherry Street, Suite 300
Denver, CO  80246
Telephone: 303-872-5712

Attorneys for Jeffrey Metcalf, M.D.:
Barbara Glogiewicz
Sheryl Bridges
Kennedy Childs, P.C.
633 17th Street, Ste. 2200
Denver, CO 80202
Telephone: 303-825-2700

Attorneys for Jason Rozeski M.D.:
John Streelman
Kevin Kuhn
Wheeler Trigg O'Donnell, LLP
320 17th Street, Ste. 4500
Denver, CO 80202
Telephone: 303-244-1800

Attorney for the United States of America:    Attorneys for Platte Valley Medical Center:
Mark S. Pestal                                Richard L. Murray, Jr.
Assistant U.S. Attorney                       S. Jane Mitchell
United States Attorney's Office               Hall & Evans, LLC
1125 17th St. Suite 700                       1125 17th St. Suite 600
Denver, CO 80202                              Denver, CO 80202
Telephone: 303-454-0101                       Telephone: 303-628-3300

## 2.JURISDICTION

The Court has subject matter jurisdiction over claims against the United States of

America pursuant to 28 U.S.C. § 1346(b).  The Court has supplemental jurisdiction over the

remaining defendants pursuant to 28 U.S.C. § 1367(a).

## 3.CLAIMS AND DEFENSES

### a.      Dalip Basanti:

The providers at Salud Medical Care managed Mrs. Basanti's diabetes for several years.

The providers failed to provide proper monitoring and treatment over several years leading to

uncontrolled diabetes and ultimately the misdiagnosis of diabetic neuropathy in Mrs. Basanti.

This misdiagnosis obfuscated her presentation in September and October 2009 when she had

increasing signs of a spinal cord compression.  Additionally, the providers at Salud saw Mrs.

Basanti for neck pain, shoulder pain, and leg numbness on numerous occasions, including six

visits between September 9 and October 27, 2009, and failed to properly evaluate and diagnose

Mrs. Basanti's condition.  These failures were negligent and a cause of Mrs. Basanti's injuries.

On September 20, 2009, Mrs. Basanti presented to PVMC's Emergency Department

complaining of left leg numbness and pain between her shoulder blades.  Mrs. Basanti was seen

in the Emergency Department by Jeffrey Metcalf, M.D.  Dr. Metcalf assessed Mrs. Basanti with

a sensory deficit on the left, and his differential diagnosis included ischemic CVA, cerebral-

cervical trauma, CNS mass/tumor, and hypoglycemia.  Dr. Metcalf failed to order any objective testing to rule out CNS mass/tumor.  Despite these potential explanations for her problems, he discharged her with a diagnosis of back pain and told her to see her PCP.  Dr. Metcalf failed to inform both Mrs. Basanti and her primary care providers that a CNS tumor/mass was a possible explanation for her pain and her numbness.  These failures were negligent and a cause of Mrs. Basanti's injuries.

On October 27, 2009, Mrs. Basanti presented to the Emergency Department at PVMC with multiple complaints, including right shoulder pain, constipation, bilateral leg weakness, right leg tingling, and vomiting.  Mrs. Basanti was initially seen by Jason Rozeski, M.D., in the Emergency Department.  At Dr. Rozeski's request, Mrs. Basanti was evaluated for admission by Layne Bracy, M.D.  Dr. Bracy examined Mrs. Basanti and determined she was unable to move her right leg.  Dr. Bracy discussed his findings with Dr. Rozeski and Melissa Beagle, M.D., and expressed his concerns for admitting Mrs. Basanti to PVMC because of the lack of neurological or neurosurgical services.  Dr. Bracy declined to admit Mrs. Basanti until further testing was completed to assess the cause of her right leg paralysis.  Despite receiving this information and before any radiographic testing, Dr. Rozeski diagnosed Mrs. Basanti with hyponatremia, diabetes, and weakness and wrote orders for Mrs. Basanti to be admitted to PVMC.  Mrs. Basanti contends that Dr. Rozeski failed to properly and appropriately conduct a thorough physical examination on October 27, 2009.  Dr. Rozeski also failed to order appropriate diagnostic testing to determine the cause of her signs and symptoms including her right leg paralysis.  Finally, Dr. Rozeski wrote orders for admission to a facility which did not have the adequate level of care for Mrs. Basanti's neurological condition.  In these instances, Dr. Rozeski was negligent and caused injury to Mrs. Basanti.

Dr. Beagle accepted Mrs. Basanti for admission to PVMC despite her significant neurological deficits. Dr. Beagle examined Mrs. Basanti on October 27, 2009 and failed to notice or assess her right leg paralysis. Dr. Beagle did not order objective testing to determine the cause of this significant neurological deficit, did not diagnose that Mrs. Basanti had progressive neurologic deficits, and did not order more frequent neurologic checks. Dr. Beagle was negligent in these ways in her care and treatment of Mrs. Basanti, and this negligence was a cause of Mrs. Basanti's injuries.

The PVMC nurses caring for Mrs. Basanti on October 27 and October 28, 2009 failed to timely and appropriately monitor her neurological status. In addition, the nurses failed to report Mrs. Basanti's low blood pressure to a physician or the Rapid Assessment Team (RAT). The nurses failed to report an output of 200 cc's of urine as required by hospital policy. Finally, Barbara Herivel, R.N., failed recognize that Mrs. Basanti had a new onset of bilateral lower extremity paralysis and upper extremity weakness at 8:10 a.m. on October 28th and failed to report these significant and worrisome changes to a physician or the RAT team. These failures by the nurses constituted negligence and were a cause of Mrs. Basanti's injuries.

Mrs. Basanti also contends that each of the defendants in this case, acting individually or through their employees and agents, failed to engage a qualified interpreter as required by federal law and as required by the communications alternatives policy of PVMC. As a result of this failure, the providers were unable to obtain full and accurate information about Mrs. Basanti's condition. This failure was negligent, a violation of hospital policy (at PVMC), a violation of Federal Executive Order and regulations, and a cause Mrs. Basanti's injuries.

As a result of the defendants' negligence, Mrs. Basanti is permanently paralyzed at the T2 level, with loss of bowel and bladder function. Mrs. Basanti has incurred and will continue to

incur medical and related expenses over the course of her lifetime.  Additionally, Mrs. Basanti

has incurred lost wages and will have lost wages in the future.  Mrs. Basanti also has

noneconomic losses, including pain and suffering, permanent impairment, disfigurement, loss of

quality of life, and inconvenience.

    **b.**    **Jeffrey Metcalf, M.D.:**

On September 20, 2009, Plaintiff presented to the Platte Valley Medical Center

Emergency Department and was evaluated by Dr. Metcalf.  Dr. Metcalf conducted an

appropriate examination of Plaintiff, arrived at an appropriate differential diagnosis, and made

appropriate recommendations to Plaintiff regarding her medical care and condition.  This

emergency department visit lasted almost three hours.  Plaintiff presented complaining of

sensory changes in her left leg and left side as well as pain between her shoulder blades.  Dr.

Metcalf performed a history and physical examination of Plaintiff.  An EKG and a chest x-ray

study were ordered. Blood and urine lab tests were ordered.  Emergent life and limb threatening

conditions were ruled out.  Plaintiff received medications to treat her complaints and instructions

to present to her primary care physician within two days for further follow-up.  Upon discharge,

Plaintiff reported that her pain and numbness were much improved.  During his examination of

Plaintiff, Dr. Metcalf did not appreciate a language barrier with Plaintiff such that he was unable

to effectively communicate with Plaintiff regarding her medical condition.

    **c.**    **Jason Rozeski, M.D.:**

Jason Rozeski, M.D. ("Dr. Rozeski") denies all allegations of wrongdoing or substandard

care of any kind.  The care provided by Dr. Rozeski was, at all times, reasonable and appropriate

and did not in any way cause injury or damage to Plaintiff.

Dr. Rozeski saw Plaintiff in the early morning hours of October 27, 2009 at the Platte

Valley Medical Center Emergency Department.  Plaintiff arrived to the Emergency Department at 3:20 in the morning.  Dr. Rozeski saw Plaintiff following her arrival and until 7:00 a.m. when he went off shift.  During that short time period, Dr. Rozeski completed a very thorough and reasonable work-up of Plaintiff.  Prior to October 27, 2009, Dr. Rozeski had never met or treated Plaintiff, but Plaintiff did have an extensive history of treatment with the Salud Family Health Center.  Those records were not available to Dr. Rozeski.

Plaintiff arrived to the Emergency Department by private vehicle driven by her friend "Lovely."  Plaintiff was able to walk to her car and she was complaining of pain in her shoulders.  Lovely remained at the Emergency Department with Plaintiff.  Lovely is fluent in Plaintiff's native language, Punjabi, and was available to translate if communication was a problem.  Plaintiff's alleged language barriers did not prevent Dr. Rozeski from providing Plaintiff with appropriate and reasonable medical care.

Plaintiff described complaints of "generalized weakness, increased blood sugar, right groin pain and right neck pain" according to nursing notes and "right shoulder pain, constipation, weakness, bilateral leg tingling and vomiting" according to Dr. Rozeski's interview.  Plaintiff was hyperglycemic and reported a history of high blood pressure, diabetes, neuropathy and leg weakness.  Plaintiff had normal vital signs and a normal neurologic examination.  Plaintiff was fully oriented, had no cranial nerve deficit, full strength, normal reflexes (including Babinski), no loss of sensation (including pinprick and cold), but with subjective tingling in no pattern.  A rectal exam was performed and revealed normal tone.

Plaintiff's wide range of symptoms could have been attributed to any number of conditions.  Dr. Rozeski took prompt and thorough action to identify the most acute conditions and to narrow the source of Plaintiff's symptoms.  Dr. Rozeski ordered a chest x-ray and CT of

the lumbar spine.  He ordered a number of labs that revealed hyponatremia and elevated blood glucose.  Dr. Rozeski conferred with Dr. Layne Bracy at 0535.  The chart reflects that Dr. Bracy evaluated Plaintiff and that he requested an MRI of the lumbar spine and brain.

Those MRIs were ordered.  The MRI of the lumbar was obtained at 7:20 a.m. and the results were received at 8:40 a.m., after Dr. Rozeski had transferred care and gone off shift.  Dr. Beagle, the physician going on shift at 7:00 a.m. and relieving Dr. Bracy, acknowledges that Plaintiff was admitted and that she had assumed the care of Plaintiff.  Any decline in Plaintiff's condition occurred following Dr. Rozeski's care and treatment.  No further testing or imaging was indicated during Dr. Rozeski's short time with the Plaintiff, nor would such testing or imaging have changed Plaintiff's outcome.  Dr. Rozeski did everything reasonably possibly to treat Plaintiff in the short period of time he saw her and to rule out acute conditions.  Dr. Rozeski acted at all times as would any other reasonable, appropriate and diligent emergency medicine physician – he ordered the appropriate tests/imaging, recommended the patient for admission, and relied on the admitting physicians to continue Plaintiff's work-up.

### d.      Platte Valley Medical Center:

PVMC asserts that care provided through its institution, nursing and allied staff was reasonable and not the cause of plaintiff's claimed injuries, damages, or losses. PVMC denies that it was negligent in any way.

On September 20 and October 27, 2009, nurses in the emergency department provided appropriate care and complied with physician orders with respect to Ms. Basanti.  They were not responsible for diagnosing or determining the cause of plaintiff's presentation.  Nor were they responsible for determining in what why Ms. Basanti should be managed after leaving the emergency department on these dates.

PVMC was not responsible for the physician's decision to admit plaintiff to its facility. Admission on October 27, 2009, for weakness and hyponatremia treated by IV fluids would seem reasonable.

On the floor on October 27 and 28, the nurses complied with physician orders and could reasonably conclude that plaintiff was admitted for supportive care for her generalized weakness, hyponatremia, and recent illness. There were no orders that would have suggested that plaintiff was to be monitored or followed for neurologic injury or manifestations or consequences of plaintiff's then unknown benign thoracic tumor. Under the circumstances, motor or neurologic basic checks, fluid status, hemodynamic status, and other findings did not reasonably require contact with the attending physician or the "RAT" team, nor would such contact have changed the outcome.

By 0810 on October 28, 2009, plaintiff had apparently suffered paralysis of her lower extremities and by this time a different course of treatment or response would not have changed her outcome.

PVMC's personnel's communication with the plaintiff, given the purpose of the communication, was reasonable and did not violate law.

  e.  **United States of America:**

Plaintiff's paraplegia is the result of the insidious effects of a very rare, congenital spinal cyst that caused compression of and neurologic damage to her thoracic spinal cord. The location of the cyst in her upper back (thoracic level T-1-2) made diagnosis possible only through an MRI of her thoracic spine. In the months prior to her cyst causing permanent damage, Plaintiff, who also suffered from diabetes, experienced varying physical complaints providing her medical providers insufficient signs and symptoms to alert them to the need for an MRI of her thoracic

spine.  Moreover, the relatively common signs and symptoms (aches, pains, and later, one-sided leg numbness) that Plaintiff experienced waxed and waned over months, if not years, and served to confound the diagnosis of the rare cyst until her symptoms became more prominent and telling, albeit at a point that was too late to avoid permanent injury.  As a result of the confusing constellation of signs and symptoms, none of Plaintiff's care providers at the Salud Family Health Clinic, where she sought free medical care, were put on notice that an MRI of her T-spine should be ordered.  Regrettably, it was not until Plaintiff's condition rapidly progressed sometime over the night of October 27, 2009, that her signs and symptoms clearly pointed to the need for further diagnostic evaluation.  Upon discovering Plaintiff's changed neurologic condition on the morning of October 28, 2009, Dr. Melissa Beagle, a Salud Family Practice physician, expeditiously facilitated transfer of Plaintiff's care to a higher-level facility for further evaluation and care.  As part of an urgent work up by a team of three specialists at the Aurora South Medical Center, Plaintiff's rare, benign, thoracic spinal cyst was isolated from several other possible causes of her developing paralysis.  The definitive diagnosis, however, was made at a point in time that Plaintiff's neurosurgeon determined she would not benefit from emergent decompression surgery on the evening of October 28, 2009, and it was scheduled for the next day.

## 4.  STIPULATIONS

a.    The parties stipulate to the authenticity of the medical records disclosed in discovery, except those that have been redacted.  This stipulation does not preclude the parties from objecting to the records on other grounds.

## 5.PENDING MOTIONS

a.      Defendant Jeffery Metcalf, M.D.'s Motion to Strike Plaintiff's Expert Glenn

Flores, M.D. and to Strike Language Opinions by Plaintiff's Experts Laurence Huffman, M.D.,

and David Glaser, M.D., filed on May 24, 2013.  Response filed on June 21, 2013, Reply filed

on July 9, 2013.

b.      The parties shall file Motions in *Limine* on or before January 10, 2014.

c.      The United States is filing the United States' Motion for Order Prohibiting

Plaintiff from Using Altered Trial Exhibits.

## 6.WITNESSES

a.      **Non-expert witnesses to be called by Plaintiff Dalip Basanti**:

(1)      Witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A)):

(a) Dalip Basanti:  Dalip Basanti will testify to all facts regarding her
medical care and treatment before and after her paralysis.  She will
also testify regarding her injuries, damages and losses.

(b) Ranjit Basanti:  Ranjit Basanti will testify to all facts regarding Dalip
Basanti's medical care and treatment before and after her paralysis.
He will also testify regarding Dalip Basanti's injuries, damages
and losses.

(c) Brian Basanti:  Brian Basanti will testify to all facts regarding Dalip
Basanti's medical care and treatment before and after her paralysis.
He will also testify regarding Dalip Basanti's injuries, damages
and losses.

(2)      Witnesses who may be present at trial if the need arises (see
Fed.R.Civ.P. 26(a)(3)(A)):

(a) Sukhvir Kaur:  Sukhvir Kaur will testify to all facts regarding Dalip
Basanti's medical care and treatment before and after her paralysis.
She will also testify regarding Dalip Basanti's injuries, damages and
losses.

(b) Jaswant Singh: Jaswant Singh will testify to all facts regarding Dalip
Basanti's medical care and treatment before and after her paralysis.  He
will also testify regarding Dalip Basanti's injuries, damages and losses.

(c)  Harvinder Kaur:  Harvinder Kaur will testify to all facts regarding Dalip Basanti's medical care and treatment before and after her paralysis. She will also testify regarding Dalip Basanti's injuries, damages and losses.

b.   **Non-expert witnesses to be called by Defendant Jeffrey Metcalf**:

(1)   Witnesses who will be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

None.

(2)   Witnesses who may be present at trial if the need arises (see Fed.R.Civ.P. 26(a)(3)(A)):

(a)  Jeffrey Metcalf, M.D. Dr. Metcalf is a board-certified internal medicine physician who practices in the field of emergency medicine. Dr. Metcalf may testify in person on subjects including, but not limited to, any evidence or allegation concerning him or his care of Plaintiff. Dr. Metcalf may testify regarding each aspect of his care and treatment of Plaintiff, that his care and treatment of Plaintiff met the standard of care and that his care and treatment was not the cause of any injury to Plaintiff. Dr. Metcalf is expected to discuss his qualifications, education, experience and training. Dr. Metcalf may testify to any issues raised by any fact or expert witness.

Dr. Metcalf further incorporates his Fed. R. Civ. P. 26(a)(2)(C) disclosure for additional topics that he may testify to at trial. Dr. Metcalf reserves the right to use any medical or other record designated as a trial exhibit in support of his testimony at trial, including emergency department records, radiology reports, nursing notes, and other medical and billing records. Dr. Metcalf may also use exhibits such as drawings, models, diagrams, photos or illustrations to explain his testimony.

(b)  Any witness listed by any other party in this Pretrial Order.

(c)  Any individual necessary to lay an evidentiary foundation.

(d)  Any person necessary for impeachment.

(e)  Any person necessary for rebuttal.

(3)  Witnesses where testimony is expected to be presented by means of a deposition:  None at this time.

c.   **Non-expert witnesses to be called by the Defendant Jason Rozeski, M.D.**:

(1)    Witnesses who will be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

    (a)  None at this time

(2)    Witnesses who may be present at trial if the need arises (see Fed.R.Civ.P. 26(a)(3)(A)):

    (a) Jason Rozeski, M.D.  Dr. Rozeski is a board certified emergency medicine physician and a defendant in this lawsuit.  Dr. Rozeski has a right to fully defend himself at trial against the allegations asserted in this lawsuit, including factual and expert testimony.  Dr. Rozeski may testify, without limitation, regarding any evidence or allegation concerning him or his care of Plaintiff.  Dr. Rozeski may testify regarding each aspect of his care and treatment of Plaintiff, that every aspect of his care and treatment of Plaintiff met the standard of care and that his care and treatment was not the cause of any injury to Plaintiff.  Dr. Rozeski is expected to discuss his qualifications, education, experience and training.  Dr. Rozeski may testify to any issues raised by any fact or expert witness disclosed against him.  Dr. Rozeski's care of Plaintiff was brief and his workup was thorough and appropriate.  The imaging ordered by Dr. Rozeski was reasonable and it was appropriate to wait on the results of the lumbar MRI before making further decisions about the care of Plaintiff, at which time Dr. Rozeski had gone off shift and transferred care.

    Dr. Rozeski further incorporates his Fed. R. Civ. P. 26(a)(2)(C) disclosure for additional topics that he may testify to at trial.  Dr. Rozeski reserves the right to use any medical or other record designated as a trial exhibit in support of his testimony at trial, including emergency department records, radiology reports, nursing notes, and other medical and billing records.  Dr. Rozeski may also use exhibits such as drawings, models, diagrams, photos or illustrations to explain his testimony.

    (b)    Jesse Singh.  Mr. Singh is Plaintiff's friend and may be called to discuss his knowledge of Plaintiff and her husband, and Plaintiff's condition and complaints around the time of her October 27, 2009 visit to the Platte Valley Medical Center Emergency Department.

    (c)  Harvinder Kaur.  Ms. Kaur is Plaintiff's friend and may be called to discuss her knowledge of Plaintiff and her husband, Plaintiff's condition and complaints around the time of her October 27, 2009 visit to the Platte Valley Medical Center Emergency Department.

    (d)  Ranjit Basanti.  Mr. Basanti is married to Plaintiff.  Mr. Basanti may be called to discuss his family, his time in the United States, work history,

education, ownership of the family liquor store and recollection of Mrs. Basanti's medical complaints and treatment.

(d)  Any witness listed by any other party in this Pretrial Order.

(e)  Any individual necessary to lay an evidentiary foundation

(f)  Any person necessary for impeachment

(g)  Any person necessary for rebuttal

(h)  Dr. Rozeski reserves the right to offer excerpts of the deposition testimony of any party for any purpose at trial.

(i)  Dr. Rozeski reserves the right to call any party for cross-examination

(3)  Witnesses where testimony is expected to be presented by means of a deposition:

None at this time

d.  **Non-expert witnesses to be called by the Defendant PVMC**:

(1)  Witnesses who will be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

(a)  None identified at this time

(2)  Witnesses who may be present at trial if the need arises (see Fed. R.Civ.P. 26(a)(3)(A)):

(a)  Barrett, MD, John.  Dr. Barrett, an internist who saw Plaintiff at the Medical Center of Aurora on October 28, 2009, may testify in person regarding his evaluation and assessment of Plaintiff's condition upon her transfer from Platte Valley Medical Center.

(b)  Beagle, MD, Melissa.  Dr. Beagle, a Family Practice physician employed by the Salud Clinic, will testify in person concerning her care and treatment of Plaintiff at Platte Valley Medical Center on October 27 and 28, 2009.

(c)  Bhupinder, Brian.  Brian Bhupinder is plaintiff's son who is expected to testify in person about plaintiff's condition and his involvement at PVMC on 10/27 & 10/28/2009 and at MCA.

(d)  Bhupinder, Ranjit.  Ranjit is plaintiff's husband who is expected to testify in person as to plaintiff's condition and his involvement at

PVMC on 10/27 & 10/28/2009 and at MCA.

(e)  Bracy, MD, Layne.  Dr. Bracy, who was a Family Practice physician employed by the Salud Family Clinic, will testify about his encounter with Plaintiff at the Platte Valle Medical Center on October 27, 2009.

(f)  Chang, MD, Ira (see below)

(g)  Deutchman, MD, Mark.  Dr. Deutchman, an expert in Family Medicine, will testify in person concerning the care and treatment rendered by the medical providers employed by the Salud Clinic.

(h)  Forrester, MD, Joseph.  Dr. Forrester, an intensivist at the Medical Center of Aurora, who saw Plaintiff on October 28, 2009, may testify in person regarding his evaluation and assessment of Plaintiff's condition upon her transfer from Platte Valley Medical Center.

(i)  Herivel, RN, Barbara Ms. Herivel is a PVMC medical nurse who will testify in person about her care and treatment of plaintiff.

(j)  Hogan, MD, James.  Dr. Hogan will testify in person as to his activity, role and communications in the PVMC ED on October 27, 2009.

(k)  Kaur, Harvinder.  Ms. Harvinder is a family friend who will testify in person about her involvement with plaintiff and her transport to PVMC on 10/27/09.

(l)  Kaur, Sukhvir.  Mr. Sukhvir is a family friend who will testify in person about his involvement with plaintiff and events at PVMC.

(m)  Kovarik, RN, Meghan.  Ms. Kovarik is a PVMC nurse who willtestify in person about her care and treatment of plaintiff.

(n)  Kuhn, RN, Allison Ms. Kuhn is a PVMC nurse who will testify in person about her involvement with plaintiff's care in the ED on 10/28/2009.

(o)  Laine, Jory.  Mr. Laine, an economist, will testify in person concerning his evaluation of Plaintiff's economic damages claimed as a result of her alleged injuries.

(p)  Lewis, M.D., Kelli  (see below)

(q)  Metcalf, MD, Jeffery (see above)

(r)  Pankowski, RN, Anita.  Ms. Pankowski is a PVMC nurse who will testify in person about her involvement with plaintiff's care on 10/27/2009.

(s)  Sexson, (Albrandt), RN, Kori.  Ms. Sexton is a PVMC medical floor nurse who will testify in person about her involvement with plaintiff's care.

(t)  Rozeski, MD, Jason (see description above)

(u)  Salud Clinic physician and other providers, including, Drs. Farley, Beagle, Rufner, Robinson, Eileen, Denegri, and Eileen Flaherty, FNP.

(v)  Singh, Jaswant.  Mr. Jaswant is a family friend who will testify in person about events at PVMC concerning plaintiff.

(w)  Tolge, MD, Celina.  Dr. Tolge, a neurologist who saw Plaintiff upon her admission to the Medical Center of Aurora may testify in person regarding her evaluation, assessment, and care of Plaintiff on October 28, 2009.

(x)  Walter, MD, Harry.  Dr. Walter is a treating physician who will testify in person about plaintiff's condition and ability to communicate.

(y)  Williams, Zachery.  Mr. Williams is a PVMC employee who will testify in person about his care of plaintiff on the medical floor

(z)  Any witness or expert listed by any other party.

(3)    Witnesses where testimony is expected to be presented by means of a deposition:

None

e.    **Non-expert witnesses to be called by the United States of America**:

(1)    Witnesses who will be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

(a)  Melissa Beagle, M.D.  Dr. Beagle, a Family Practice physician employed by the Salud Clinic, will testify in person concerning her care and treatment of Plaintiff at Platte Valley Medical Center on October 27 and 28, 2009.

(b)  Layne Bracy.  Dr. Bracy, who was a Family Practice physician employed by the Salud Family Clinic, will testify about his encounter with Plaintiff at the Platte Valle Medical Center on October 27, 2009.

(c)  Alberto Denegri, M.D.  Dr. Denegri, a Family Practice physician employed by the Salud Clinic, will testify in person concerning his care and treatment of Plaintiff at the Salud Clinic in 2009.

(d)  Tillman Farley, M.D.  Dr. Farley, a Family Practice physician and Executive Vice President of Medical Services at the Salud Family Clinic, will testify in person concerning its policies and procedures relating to patient care including the provision and availability of free medical care to patients such as Plaintiff.

(e)  Eileen Flaherty, FNP.  Family Nurse Practitioner Flaherty, who was employed by the Salud Clinic, will testify in person concerning her care and treatment of Plaintiff at the Salud Clinic in 2009.

(f)  Kelet Robinson, M.D.  Dr. Robinson, a Family Practice physician employed by the Salud Clinic, will testify in person concerning her care and treatment of Plaintiff at the Salud Clinic.

(g)  Lorraine Ruffner, M.D.  Dr. Ruffner, a Family Practice physician employed by the Salud Clinic, will testify in person regarding he care and treatment of Plaintiff at the clinic in 2009.

(2)    Witnesses who may be present at trial if the need arises (see Fed. R. Civ. P. 26(a)(3)(A)):

(a)  John Barrett, M.D.  Dr. Barrett, an internist who saw Plaintiff at the Medical Center of Aurora on October 28, 2009, may testify in person regarding his evaluation and assessment of Plaintiff's condition upon her transfer from Platte Valley Medical Center.

(b)  Joseph M. Forrester, M.D.  Dr. Forrester, an intensivist at the Medical Center of Aurora, who saw Plaintiff on October 28, 2009, may testify in person regarding his evaluation and assessment of Plaintiff's condition upon her transfer from Platte Valley Medical Center.

(c)  Andre May, M.D.  Dr. May, Family Practice physician employed by the Salud Clinic, may testify in person, regarding his care and treatment of Plaintiff at the Salud Clinic.

(d)  Celina Tolge, M.D.  Dr. Tolge, a neurologist who saw Plaintiff upon her admission to the Medical Center of Aurora may testify in person regarding her evaluation, assessment, and care of Plaintiff on October 28, 2009.

(e)  Nancy Welter, FNP.  Nurse Practitioner Welter, who was employed by the Salud Clinic, may testify in person regarding her care and treatment

of Plaintiff at the clinic.

(f) All witnesses listed by another party, or needed for foundation, impeachment, or rebuttal

(3)  Witnesses where testimony is expected to be presented by means of a deposition:

None

f.  **Expert witnesses to be called by Plaintiff Dalip Basanti**:

(1)  Witnesses who will be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

(a)  Glenn Flores, M.D.:  Dr. Flores will testify consistent with his report and deposition.

(b)  David Glaser, M.D.:  Dr. Glaser will testify consistent with his report and deposition.

(c)  Thomas Huffman, M.D.:  Dr. Huffman will testify consistent with his report and deposition.

(d)  Debbie Morikawa, RN:  Nurse Morikawa will testify consistent with her report and deposition.

(e)  Michael Rauzzino, M.D.:  Dr. Rauzzino will testify consistent with his medical records and deposition.

(f)  Patricia Pacey, Ph.D.:  Dr. Pacey will testify consistent with her report and deposition.

(g)  Helen Woodard, M.A.:  Mrs. Woodard will testify consistent with her report and deposition.

(h)  Thomas Balazy, M.D.:  Dr. Balazy will testify consistent with his medical records and deposition.

(i)  Layne Bracy, M.D.:  Dr. Bracy will testify consistent with his deposition.

(j)  Mark Deutchman, M.D.:  Dr. Deutchman will testify consistent with his report and deposition.

(2)  Witnesses who may be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

(a)  Melissa Beagle, M.D.: Dr. Beagle will tesify consistent with her medical records and deposition.

(b)  Alberto Denegri, M.D.:  Dr. Denegri will testify consistent with his medical records and deposition.

(c)  Eileen Flaherty, FNP:  Ms. Flaherty will tesify consistent with her medical records and deposition.

(d)  Barbara Herivel, RN:  Nurse Herivel will tesify consistent with her medical records and deposition.

(e)  Megan Kovarik, RN:  Nurse Kovarik will tesify consistent with her medical records and deposition.

(f)  Jason Rozeski, M.D.: Dr. Rozeski will testify consistent with his medical records and deposition.

(g)  Jeffrey Metcalf, M.D.:  Dr. Metcalf will testify consistent with his medical records and deposition.

(h)  Lorraine Rufner, M.D.:  Dr. Rufner will tesify consistent with her medical records and deposition.

(i)  Cory Sexson, RN:  Nurse Sexson will tesify consistent with her medical records and deposition.

(j)  Nancy Welter, FNP:  Ms. Welter will tesify consistent with her medical records and deposition.

(k)  Zachery Williams, CNA:  Mr. Williams will testify consistent with his medical records and deposition.

(l)  Joseph Forrester, M.D.: Dr. Forrester will testify consistent with his medical records and deposition.

(m)  Celina Tolge, M.D.:  Dr. Tolge will tesify consistent with her medical records and deposition.

(n)  Harry Walter, D.O.:  Dr. Walter will tesify consistent with his medical records and deposition.

(o)  John Barrett, M.D.:  Dr. Barrett will testify consistent with his medical records and deposition.

(p)  Kelet Robinson, M.D.:  Dr. Robinson will tesify consistent with her medical records and deposition.

g.    **Expert witnesses to be called by Jeffrey Metcalf, M.D.**:

(1)    Witnesses who will be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

(a)  None at this time.

(2)    Witnesses who may be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

(a)    Kelli Lewis, M.D.: Dr. Lewis is a board certified emergency medicine physician. Dr. Lewis may testify in person regarding all topics addressed in her various reports disclosed in this litigation, as well as her deposition. She is specifically expected to testify that Dr. Metcalf acted as a reasonably careful physician practicing emergency medicine under the circumstances of the time and that he did not cause or contribute to Plaintiff's claimed damages/injury in this case.

(b)    Ira Chang, M.D.: Dr. Chang is a physician board certified in neurology and psychiatry. Dr. Chang may testify in person regarding all topics addressed in her various reports disclosed in this litigation, as well as her deposition.

(c)    Janet Toney: Ms. Toney, a Certified Lifecare Planner, may testify in person concerning her rebuttal opinions regarding Plaintiff's future care needs.  She may testify regarding all topics addressed in her various reports disclosed in this litigation.

(d)    Steven Day, Ph.D.: Dr. Day may testify in person concerning his opinions about Plaintiff's life expectancy. Dr. Day may testify regarding all topics addressed in his various reports disclosed in this litigation.

(e)  Jeffrey Arle, M.D.: Dr. Arle may testify in person concerning his rebuttal opinions concerning Plaintiff's care and treatment from the perspective of a neurosurgeon. Dr. Arle may testify regarding all topics addressed in his various reports disclosed in this litigation.

(f)    J. William Wellborn, M.D.: Dr. Wellborn, a Physical Medicine physician may testify in person concerning his rebuttal opinions concerning Plaintiff's future medical needs. He may testify regarding all topics addressed in his various reports disclosed in this litigation.

(g)    Jory Laine: Jory Laine may testify regarding all topics addressed in his various reports disclosed in this litigation, as well as his deposition.

(h)     Jeffrey Metcalf, M.D.: Dr. Metcalf is expected to testify as to all matters discussed or referenced in his deposition, taken November 15, 2012. He is expected to testify consistent with the medical records pertaining to his September 20, 2009 evaluation of Ms. Basanti, and to explain the care and treatment he provided to Ms. Basanti. Dr. Metcalf will discuss his experience as an emergency room physician and how he approaches patient care in an emergency department setting.

Dr. Metcalf will explain the thought process behind his evaluation of Ms. Basanti and the recommendations he made regarding her care and treatment. Dr. Metcalf will testify as to Ms. Basanti's presentation and symptomatology on September 20, 2009 and compare that to her symptomatology upon discharge. He will discuss his findings upon examination of Ms. Basanti, including the normal neurological findings and all pertinent negatives such as his findings of a normal gait and an ability to move all four extremities without apparent limitation. Dr. Metcalf will discuss that Ms. Basanti had improvement in her reported pain and numbness upon discharge, and that she was discharged with a final diagnosis of back pain and paresthesias with instructions to follow-up with Dr. Robinson in two days. He will testify regarding his interactions with Ms. Basanti and his interaction with those individuals who accompanied her to the Platte Valley Medical Center emergency department on September 20, 2009. Dr. Metcalf will explain that he did not have difficulty communicating with Ms. Basanti on September 20, 2009.

Dr. Metcalf further incorporates his Fed. R. Civ. P. 26(a)(2)(C) disclosure for additional topics that he may testify to at trial. Dr. Metcalf reserves the right to use any medical or other record designated as a trial exhibit in support of his testimony at trial, including emergency department records, radiology reports, nursing notes, and other medical and billing records. Dr. Metcalf may also use exhibits such as drawings, models, diagrams, photos or illustrations to explain his testimony.

(i)      Any witness listed by any other party in this Pretrial Order.

(3)     Witnesses where testimony is expected to be presented by means of a deposition:

None at this time.

h.      **Expert witnesses to be called by Jason Rozeski, M.D.:**

(1)     Witnesses who will be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

(a)  None at this time

(2)      Witnesses who may be present at trial (see Fed. R. Civ. P. 26(a)(3)(A)):

(a)  Herbert G. Ogden, M.D.  Dr. Ogden is a board certified emergency medicine physician.  Dr. Ogden may testify regarding all topics addressed in his various reports disclosed in this litigation.

(b)  Kevin Thomas Tong, M.D.  Dr. Tong is a physician board certified in internal medicine and endocrinology.  Dr. Tong may testify regarding all topics addressed in his various reports disclosed in this litigation.

(c)  Michael A. Finn, M.D.  Dr. Finn is a physician specializing in neurosurgery.  Dr. Finn may testify regarding all topics addressed in his various reports disclosed in this litigation.

(d)  Ira Chang, M.D.  Dr. Chang is a physician board certified in neurology and psychiatry.  Dr. Chang may testify regarding all topics addressed in her various reports disclosed in this litigation.

(e)  Jory Laine.  Jory Laine may testify regarding all topics addressed in his various reports disclosed in this litigation.

(f)  Janet Toney.  Janet Toney may testify regarding all topics addressed in her various reports disclosed in this litigation.

(g)  William Wellborn, M.D.  Dr. Wellborn may testify regarding all topics addressed in his various reports disclosed in this litigation.

(h)  Steven Day, Ph.D.  Dr. Day may testify regarding all topics addressed in his various reports disclosed in this litigation.

(i)  Jason Rozeski, M.D.  Dr. Rozeski is a board certified emergency medicine physician and a defendant in this lawsuit.  Dr. Rozeski has a right to fully defend himself at trial against the allegations asserted in this lawsuit, including factual and expert testimony.  Dr. Rozeski may testify, without limitation, regarding any evidence or allegation concerning him or his care of Plaintiff.  Dr. Rozeski may testify regarding each aspect of his care and treatment of Plaintiff, that every aspect of his care and treatment of Plaintiff met the standard of care and that his care and treatment was not the cause of any injury to Plaintiff.  Dr. Rozeski is expected to discuss his qualifications, education, experience and training.  Dr. Rozeski may testify to any issues raised by any expert witness disclosed against him.  Dr. Rozeski's care of Plaintiff was brief and his workup was thorough and appropriate.  The imaging ordered by Dr. Rozeski was reasonable and it was appropriate to wait on the results of the lumbar MRI before making

further decisions about the care of Plaintiff, at which time Dr. Rozeski had gone off shift and transferred care.

Dr. Rozeski further incorporates his Fed. R. Civ. P. 26(a)(2)(C) disclosure for additional topics that he may testify to at trial.  Dr. Rozeski reserves the right to use any medical or other record designated as a trial exhibit in support of his testimony at trial, including emergency department records, radiology reports, nursing notes, and other medical and billing records. Dr. Rozeski may also use exhibits such as drawings, models, diagrams, photos or illustrations to explain his testimony.

(j)  Any witness listed by any other party in this Pretrial Order.

(3)    Witnesses where testimony is expected to be presented by means of a deposition:

None at this time

i.    **Expert witnesses to be called by Platte Valley Medical Center**:

(1)    Witnesses who will be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

(a)  Barbe, RN, Sally.  Sally Barb, RN, is PVMC's nursing expert who will testify in person as to the reasonableness of the medical floor nurses' conduct on October 27 & 28, 2009

(b)  Lefkowits, MD, Donald.  Dr. Lefkowits is an emergency department physician who will testify in person as to the reasonableness of the care of PVMC emergency department nurses and to plaintiff's absence of neurogenic shock.

(c)  Ribovich, MD, Thomas.  Dr. Ribovich is a neurosurgeon expert who will testify in person as to the plaintiff's neurologic status on the PVMC medical floor on 10/27 & 10/28/2009.

(d)  See Section entitled "Witnesses who may be present at trial" for additional witness who may be called upon to provide expert opinions or testimony.

(2)    Witnesses who may be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

None at this time

(3)    Witnesses where testimony is expected to be presented by means of a deposition:

None at this time

j.   **Expert witnesses to be called by the United States of America**:

(1)   Witnesses who will be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

(a)  Jeffrey Arle, M.D.  Dr. Arle will testify in person concerning his rebuttal opinions concerning Plaintiff's care and treatment from the perspective of a neurosurgeon.

(b)  Melissa Beagle, M.D.  Dr. Beagle will testify in person concerning the opinions she formed during her care and treatment of Plaintiff on October 27 and 28, 2009, at the Platte Valley Medical Center.

(c)  Layne Bracy, M.D.  Dr. Bracy will testify in person concerning the opinions he formed during his encounter with Plaintiff on October 27, 2009, at the Platte Valley Medical Center.

(d)  Steven Day, Ph.D.  Dr. Day will testify in person concerning his opinions about Plaintiff's life expectancy.

(e)  Alberto Denegri, M.D.  Dr. Denegri, a Family Physician employed by the Salud Clinic, will testify in person concerning the opinions he formed during his care and treatment of Plaintiff at the clinic.

(f)  Mark Deutchman, M.D.  Dr. Deutchman, an expert in Family Medicine, will testify in person concerning the care and treatment rendered by the medical providers employed by the Salud Clinic.

(g)  Jory Laine.  Mr. Laine, an economist, will testify in person concerning his evaluation of Plaintiff's economic damages claimed as a result of her alleged injuries.

(h)  Kelet Robinson, M.D.  Dr. Robinson, who is a Family Practice physician employed by the Salud Family Clinic, will testify in person concerning the opinions she formed about Plaintiff's medical condition during her care and treatment at the Salud Clinic.

(i)  David S. Schade, M.D.  Dr. Schade, an endocrinologist, will testify in person concerning his opinions about the medical care provided by Defendants, including the providers employed by the Salud clinic.

(j)  Janet Toney  Ms. Toney, a Certified Lifecare Planner, will testify in person concerning her rebuttal opinions regarding Plaintiff's future care needs.

(k)  Harry J. Walter, D.O.  Dr. Walter, a Family Medicine physician in private practice, will testify in person concerning his opinions concerning his care and treatment of Plaintiff in 2009 for complaints of back pain.

(l)  J. William Wellborn, M.D.  Dr. Wellborn, a Physical Medicine physician will testify in person concerning his rebuttal opinions concerning Plaintiff's future medical needs.

(2)     Witnesses who may be present at trial (see Fed.R.Civ.P. 26(a)(3)(A)):

(a)  Eleanor Price, M.D.  Dr. Price may testify in person concerning her current care and treatment of Plaintiff following her surgery to remove the rare, benign Thoracic cyst.

(3)     Witnesses where testimony is expected to be presented by means of a deposition:

None at this time

## 7. EXHIBITS

a.     Exhibits to be offered at trial:

(1)     Plaintiff:  *See* Attachment 1

(2)     Defendants:  *See* Attachment 2

b.     Copies of listed exhibits (other than those for demonstrative purposes) must be provided to opposing counsel on or before January 10, 2014.  The objections contemplated by Fed.R.Civ.P. 26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile on or before March 3, 2014.

## 8. DISCOVERY

Discovery has been completed.

## 9. SPECIAL ISSUES

Whether the Court will employ an advisory jury as to Plaintiff's claims against the United States will need to be addressed 30 days prior to the Trial Preparation Conference in order to allow time for preparation of jury instructions.  The United States opposes the Court's

use of an advisory jury for the claims against it given that the Federal Tort Claims Act does not waive the government's sovereign immunity to allow jury trials for such actions.

## 10.  SETTLEMENT

a.      Mediation is scheduled for January 15, 2014 with Judge Bockman.

## 11.  OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have discussed it with the clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial and may not be amended except by consent of the parties and approval by the Court or by order of the Court to prevent manifest injustice.  The pleadings will be deemed merged herein.  This Final Pretrial Order supersedes the Scheduling Order.  In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13.  TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

a.      Trial is to the Court on the claims against the United States and to a jury on the claims against the remaining Defendants.

b.      Trial is set to begin on May 13, 2014 and is set for 16 days.

c.      Trial will be Denver, Colorado.

Dated December 20, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

DATED this 16th day of December, 2013.

APPROVED:

s/*DezaRae LaCrue*
Natalie Brown
DezaRae LaCrue
Leventhal Brown & Puga, P.C.
950 S. Cherry Street, Ste. 600
Denver, CO 80246
Telephone: 303-759-9945

Anthony Viorst
The Viorst Law Offices, P.C.
950 S. Cherry Street, Suite 300
Denver, CO  80246
Telephone: 303-872-5712
Attorneys for Plaintiff

s/ *Sheryl Bridges*
Barbara Glogiewicz
Sheryl Bridges
Kennedy Childs, P.C.
633 17th Street, Ste. 2200
Denver, CO 80202
Telephone: 303-825-2700
Attorneys for Defendant Metcalf

s/*John Streelman*
John Streelman
Kevin Kuhn
Wheeler Trigg O'Donnell, LLP
320 17th Street, Ste. 4500
Denver, CO 80202
Telephone: 303-244-1800
Attorneys for Defendant Rozeski

s/Richard L. Murray, Jr.
Richard L. Murray, Jr.
Sara Jane Mitchell
Hall & Evans, LLC
1125 17th St. Suite 600
Denver, CO 80202
Telephone: 303-628-3300
Attorneys for Defendant Platte Valley Medical
Center

JOHN F. WALSH
United States Attorney

s/*Mark S. Pestal*
Assistant United States Attorney
1125 17th Street, Suite 700
Denver, Colorado 80202
Telephone: 303-454-0101
Attorneys for the United States of America

BY THE COURT

_____
United States Magistrate Judge

CASE CAPTION:  Dalip Basanti v. Jeffrey Metcalf, M.D., Jason Rozeski, M.D., Platte Valley Medical Center and the United States of America

CASE NUMBER:  1:11-CV-02765-PAB-BNB

DEFENDANTS' *SECOND AMENDED* EXHIBIT LIST:  Jeffrey Metcalf, M.D.; Platte Valley Medical Center; Jason Rozeski, M.D.; United States of America

| Exhibit Number/ Letter | Witness | Description | Deposition Exhibit Number | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| | | **MEDICAL RECORDS** | | | | | | |
| A1 | | Clinica Campesina Medical (CC 1-25) | Ex. 1 | | | | | |
| A2 | | Salud Medical Record (USA-Salud 1-155) | | | | | | |
| A3 | | Salud Medical Records (SF1-138) | Ex. 2 | | | | | |
| A4 | | Salud October 2009 Coverage Calendar | Ex. 14 | | | | | |
| A5 | | Platte Valley Medical Center 09/20/09 (PVMC 1-17) | Ex. 3 | | | | | |
| A6 | | Platte Valley Medical Center 10/27/09 through 10/28/09 (PVMC 18-104) | Ex. 4 | | | | | |
| A7 | | Platte Valley Medical Center ED Log (PVMC 130) | | | | | | |

| Exhibit Number/ Letter | Witness | Description | Deposition Exhibit Number | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| A8 | | Platte Valley Medical Center Patient Census Report for 10/27/09 & 10/28/09 (PVMC 128-129) | | | | | | |
| A9 | | Platte Valley Medical Center Physical Therapy (PVMC 131-153) | Ex. 69 | | | | | |
| A10 | | Alexander, Mihaela, MD (Neurodiagnostics) (Alex 104) | | | | | | |
| A11 | | Alpine Living Center (ALC 1-227) | | | | | | |
| A12 | | Complete Home Care (CHC 1-3020) | | | | | | |
| A13 | | Craig Hospital (CH 1-1166) | | | | | | |
| A14 | | Craig Hospital 2013 Outcomes and Value Report | Ex. 215 | | | | | |
| A15 | | Craig Hospital History and Physical dated 01/14/2013 | Ex. 217 | | | | | |
| A16 | | Craig Hospital Interdisciplinary Conference Report | Ex. 220 | | | | | |
| A17 | | Diversified Radiology of Colo. (DRC 1-19) | | | | | | |
| A18 | | Dynasplint (DYN 1-40) | | | | | | |
| A19 | | Eye Surgery Center of Colorado (ESC 1-3) | | | | | | |
| A20 | | MCPN South Aurora Family Health Services (MCPN 1-48) | | | | | | |
| A21 | | Medical Center of Aurora (MCA 1- | | | | | | |

| Exhibit Number/ Letter | Witness | Description | Deposition Exhibit Number | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| | | 516) | | | | | | |
| A22 | | Medstuff, Inc. (MSI 1-5) | | | | | | |
| A23 | | National Jewish Health (NJH 1-45) | | | | | | |
| A24 | | North Suburban Medical Center (NSMC 1-264) | | | | | | |
| A25 | | Northglenn Ambulance (NAI 1-49) | | | | | | |
| A26 | | Presybyterian/St. Luke's Medical Center (PSL 1-130) | | | | | | |
| A27 | | Quest Diagnostics (QD 1-39) | | | | | | |
| A28 | | Radiology Imaging Associates (RIA 1-30) | | | | | | |
| A29 | | Rauzzino, Michael MD (RAU 1-15) | | | | | | |
| A30 | | Rocky Mountain Medical Equipment (RMME 1-81) | | | | | | |
| A31 | | Shield Healthcare (SHC 1-8, 30-57) | | | | | | |
| A32 | | St. Anthony Family Medicine Center (SAFM 1-16) | | | | | | |
| A33 | | St. Anthony North Hospital (SAN 1-203) | | | | | | |
| A34 | | Urology Center of Colorado (UCC 1-16) | | | | | | |
| A35 | | Walgreen's Pharmacy (WAL 1-105) | | | | | | |
| A36 | | Walter, Harry, MD (Wal 1-7; Wal (b) 1) | Ex. 48 | | | | | |

| Exhibit Number/ Letter | Witness | Description | Deposition Exhibit Number | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| A37 | | SF 95 Notice September 29, 2011 (USA-SF95-1 to 16) | | | | | | |
| | | **DEFENSE EXPERT CURRICULUM VITAE** | | | | | | |
| A38 | | Kelli Lewis, MD | | | | | | |
| A39 | | Thomas Ribovich, MD | | | | | | |
| A40 | | Sally Barbe, RN | | | | | | |
| A41 | | Donald Leftkowits, MD | | | | | | |
| A42 | | Ira Chang, MD | | | | | | |
| A43 | | Steven Day Ph.D. | | | | | | |
| A44 | | Michael Finn, M.D. | | | | | | |
| A45 | | Jory Laine | | | | | | |
| A46 | | Herbert Ogden, MD | | | | | | |
| A47 | | Janet Toney | | | | | | |
| A48 | | Kevin Tong, MD | | | | | | |
| A49 | | William Wellborn, MD | | | | | | |
| A50 | | Jeffrey Arle, MD | | | | | | |
| A51 | | Mark Deutchman, MD | | | | | | |
| A52 | | David Schade, MD | | | | | | |
| | | **TREATER CURRICULUM VITAE** | | | | | | |
| A53 | | Jason Rozeski, MD | Ex. 44 | | | | | |
| A54 | | Melissa Beagle, MD | Ex. 10 | | | | | |
| A55 | | Layne Bracy, MD | | | | | | |
| A56 | | Alberto Denigri, MD | Ex. 15 | | | | | |

| Exhibit Number/ Letter | Witness | Description | Deposition Exhibit Number | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| A57 | | Tillman Farley, MD | | | | | | |
| A58 | | Eileen Flaherty, FNP | | | | | | |
| A59 | | Kelet Robinson, MD | | | | | | |
| A60 | | Lorraine Rufner, MD | Ex. 20 | | | | | |
| A61 | | Nancy Welter, FNP | Ex. 34 | | | | | |
| A62 | | Celina Tolge, MD | Ex. 51 | | | | | |
| A63 | | Joseph Forrester, MD | Ex. 58 | | | | | |
| A64 | | James Hogan, MD | Ex. 225 | | | | | |
| A65 | | Thomas Balazy, MD | Ex. 214 | | | | | |
| A66 | | Jeffrey Metcalf, MD | | | | | | |
| A67 | | Harry Walter, DO | Ex. 47 | | | | | |
| | | **EXPERT DEPOSITION EXHIBITS** | | | | | | |
| A68 | | Dr. Rauzzino's Chart (Rauzzino) | Ex. 40 | | | | | |
| A69 | | MRI Photo Series (Rauzzino) | Ex. 37-39 | | | | | |
| A70 | | List of documents reviewed by Rauzzino; table entitled "Inconsistent History by Symptom" | Ex. 108 | | | | | |
| A71 | | Front Range Spine & Neurosurgery new form, blank | Ex. 109 | | | | | |
| A72 | | Front Range Spine & Neurosurgery Legal Schedule | Ex. 110 | | | | | |

| Exhibit Number/ Letter | Witness | Description | Deposition Exhibit Number | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| A73 | | Deposition Summaries (Morikawa) | Ex. 71, 72 | | | | | |
| A74 | | Sonoma County Recorder (Morikawa) | Ex. 72 | | | | | |
| A75 | | Santa Rosa Interpreter Policy (Morikawa) | Ex. 77 | | | | | |
| A76 | | Alta Bates Interpreter Policy (Morikawa) | Ex. 78 | | | | | |
| A77 | | Morikawa Notes | Ex. 79 | | | | | |
| A78 | | Morikawa Billing | Ex. 82 | | | | | |
| A79 | | Huffman Summary Sheet | Ex. 99 | | | | | |
| A80 | | Handwritten case file notes (Pacey) | Ex. 207 | | | | | |
| A81 | | Woodard Testimony List with Handwriting | Ex. 174 | | | | | |
| A82 | | PVMC Discovery (Glaser) | Ex. 136 | | | | | |
| A83 | | Deposition Summaries (Glaser) | Ex. 137 | | | | | |
| A84 | | Glaser Billing Records | Ex. 163 | | | | | |
| A85 | | Glaser Signed ACEP Guidelines | Ex. 165 | | | | | |
| A86 | | Interview with Glaser | Ex. 168 | | | | | |
| A87 | | Letter to the Editor | Ex. 169 | | | | | |
| A88 | | Woodard file | | | | | | |
| | | **EMPLOYMENT RECORDS** | | | | | | |
| A89 | | Adecco North America LLC correspondence | | | | | | |

| Exhibit Number/ Letter | Witness | Description | Deposition Exhibit Number | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| A90 | | DIA correspondence | | | | | | |
| A91 | | HTMC Consulting correspondence | | | | | | |
| A92 | | Wendys (Wen(e) 1-96) | | | | | | |
| | | **TAX RECORDS & SSA** | | | | | | |
| A93 | | Tax Returns – Business - 2006 | | | | | | |
| A94 | | Tax Returns – Business - 2007 | | | | | | |
| A95 | | Tax Returns – Business – 2008 | | | | | | |
| A96 | | Tax Returns – Business - 2009 | | | | | | |
| A97 | | Tax Returns – Joint - 2006 | | | | | | |
| A98 | | Tax Returns – Joint – 2007 | | | | | | |
| A99 | | Tax Returns – Joint – 2008 | | | | | | |
| B1 | | Tax Returns – Joint – 2009 | | | | | | |
| B2 | | W2s of Dalip Basanti 2002, 2004, 2005 & 2008 | | | | | | |
| B3 | | Social Security Administration (SSA 1-72) | | | | | | |
| B4 | | ~~Medicaid Records (place holder)~~ | | | | | | |
| | | **IMAGING STUDIES** | | | | | | |
| B5 | | HealthOne (PL 9) 6/27/2011  CT of Head w/o contrast 11/11/2010 Voiding Cystogram 10/27/2010 Venous Duplex Rt leg 7/8/2010 CT Abdomen with Pelvis | | | | | | |

| Exhibit Number/ Letter | Witness | Description | Deposition Exhibit Number | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| | | 5/28/2010 MRI Thoracic Spine w/o contrast 2/19/2010 MRI Thoracic Spine w/wo contrast | | | | | | |
| B6 | | Medical Center of Aurora (PL 1) 10/28/2009 PERC Place CV Line | | | | | | |
| B7 | | Medical Center of Aurora South (PL 8) 10/28/2009 MRI Cervical Spine w/wo contrast 10/29/2009 Thoracic Spine 2 views 11/4/2009  Xray chest Portable 10/28/2009 MRI Thoracic Spine w/wo contrast 10/28/2009 Perc Placement CV Line | | | | | | |
| B8 | | North Suburban Medical Center (PL 5) 6/27/2011  Head CT 11/11/2010 Cystogram 10/27/2010 Venous Duplex 7/18/2010 Abdomen CT 5/28/2010 Thoracic Spine MRI | | | | | | |
| B9 | | Platte Valley Medical Center  (PL 7) 10/27/2009 Chest, PA/LAT | | | | | | |

| Exhibit Number/ Letter | Witness | Description | Deposition Exhibit Number | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| | | 10/27/2009 MRI Brain w/o contrast 10/27/2009 MRI Lumbar w/o contrast 10/27/2009 CT Lumbar Spine w/o contrast 9/20/2009 Chest, PA/LAT | | | | | | |
| B10 | | Salud Family Health Center (PL 6): 9/28/2009 Xray Lumbar Spine 9/28/2009 Xray Right Shoulder 1/8/2009 Xray Left Knee | | | | | | |
| B11 | | Swedish Medical Center (PL 2) 11/10/2009  Venous Duplex 11/20/2009  Brain MRI w/wo contrast 11/23/2009  US Complete Renal/Retroperitoneal US Complete 11/10/2009  Xray Thoracic Spine AP 11/9/2009 Xray Chest PA/lateral | | | | | | |
| B12 | | Swedish Medical Center (PL 3) 11/30/2011 KUB/ABD Single 11/30/2011 TSpine AP/LAT 11/28/2011 Renal/Peritoneal US 7/1/2010 Venous Duplex Right Leg 6/30/2010 KUB/ABD Single | | | | | | |

| Exhibit Number/ Letter | Witness | Description | Deposition Exhibit Number | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| | | 6/30/2010 Renal/Retroperitoneal US 12/21/2009 Venous Duplex LE Bilateral 11/20/2009  MRI - Cervical, Lumbar, Thoracic Spine w/wo contrast 10/2009   Chest CTA w/wo 11/10/2009  KUB/ABD Single | | | | | | |
| | | **DEMONSTRATIVES** | | | | | | |
| B13 | | Life tables, relevant biostatistical literature and data | | | | | | |
| B14 | | Chronologies, timelines, outlines, summaries of relevant medical data and/or events compiled from the medical records | | | | | | |
| B15 | | Medical illustrations, charts, photographs, models, computer animations, diagrams, depictions, blow-ups or the like of the anatomy or medicine which is the subject of this case | | | | | | |
| B16 | | Blow-ups of any disclosed document, medical record, or tangible item | | | | | | |
| B17 | | Model of the spinal cord | | | | | | |

| Exhibit Number/ Letter | Witness | Description | Deposition Exhibit Number | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| B18 | | Rozeski Handwritten Notes of Chart | | | | | | |
| | | **MISCELLANEOUS** | | | | | | |
| B19 | | Any exhibit listed by any party in this case | | | | | | |
| B20 | | ~~Any medical literature relied upon by any expert or needed for impeachment~~ | | | | | | |
| B21 | | Any documents needed for impeachment or rebuttal | | | | | | |
| B22 | | ~~Any deposition exhibit of any witness~~ | | | | | | |

999

CASE CAPTION:  Dalip Basanti vs. Jeffrey Metcalf, M.D., Jason Rozeski, M.D., Platte Valley Medical Center and The United States of America

CASE NO: 1:11-cv-02765-PAB-BNB

EXHIBIT LIST OF: Dalip Basanti, Plaintiff

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 1 | | Salud Records<br>1-0001 through 1-0138 | | | | | |
| 2 | | PVMC Records Admission 9/20/09<br>2-0001 through 2-0017 | | | | | |
| 3 | | PVMC Records Admission 10/28/09<br>3-0001 through 3-0087 | | | | | |
| 4 | | Harry Walter, D.O. Records<br>4-0001 | | | | | |
| 5 | | Select Medical Center of Aurora Records<br>5-0001 through 5-0073 | | | | | |
| 6 | | Select Craig Hospital Inpatient Records<br>6-0001 through 6-0391 | | | | | |
| 7 | | Select Craig Hospital Outpatient Records<br>7-0001 through 7-0077 | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | | Michael Rauzzino, MD Records<br>8-0001 through 8-0015 | | | | | |
| 9 | | National Jewish Records<br>9-0001 through 9-0045 | | | | | |
| 10 | | Alpine Living Center Records<br>10-0001 through 10-0003 | | | | | |
| 11 | | Spine Imaging Studies from the<br>Medical Center of Aurora<br>(Disc) | | | | | |
| 12 | | Medical Bill Summary<br>12-0001 through 12- | | | | | |
| 13 | | CNS Bills<br>13-00001 through 13-0005 | | | | | |
| 14 | | Craig Hospital Bills<br>14-0001 through 14-0093 | | | | | |
| 15 | | Diversified Radiology Bills<br>15-0001 through 15-0003 | | | | | |
| 16 | | Dynasplint Bills<br>16-0001 | | | | | |
| 17 | | North Suburban Bills<br>17-0001 through17-0022 | | | | | |
| 18 | | Radiology Imaging Assoc. Bills<br>18-0001 through 18-0004 | | | | | |
| 19 | | Shield Healthcare Bills<br>19-0001 through 19-0008 | | | | | |
| 20 | | Complete Home Healthcare Bills<br>20-0001 through 20-0061 | | | | | |

| 21 | | Critical Care and Pulmonary Bills 21-0001 through 21-0002 | | | | | |
| 22 | | National Jewish Bills 22-0001 through 22-0008 | | | | | |
| 23 | | North Suburban Ambulance Bills 23-0001 through 23-0010 | | | | | |
| 24 | | Garrett Raymond Bills 24-0001 | | | | | |
| 25 | | Urology Center of Co Bills 25-0001 through 25-0002 | | | | | |
| 26 | | Alpine Living Center Bills 26-0001 through 26-0022 | | | | | |
| 27 | | | | | | | |
| 28 | | | | | | | |
| 29 | | | | | | | |
| 30 | | | | | | | |
| 31 | | | | | | | |
| 32 | | | | | | | |
| 33 | | | | | | | |
| 34 | | | | | | | |
| 35 | | | | | | | |
| 36 | | | | | | | |
| 37 | | | | | | | |
| 38 | | | | | | | |
| 39 | | | | | | | |
| 40 | | | | | | | |
| 41 | | | | | | | |

| 42 | | | | | | | |
|----|--|--|--|--|--|--|--|
| 43 | | | | | | | |
| 44 | | | | | | | |
| 45 | | | | | | | |
| 46 | | | | | | | |
| 47 | | | | | | | |
| 48 | | | | | | | |
| 49 | | | | | | | |
| 50 | | PVMC Communication Alternative Policy 50-0001 through 50-0004 | | | | | |
| 51 | | PVMC Rapid Assessment Policy 51-0001 through 51-0005 | | | | | |
| 52 | | PVMC Bylaws, Rules & Regulations 52-0001 through 52-0089 | | | | | |
| 53 | | PVMC Chain of Command Policy 53-0001 through 53-0004 | | | | | |
| 54 | | Lane Bracy, MD CV 54-0001 | | | | | |
| 55 | | Thomas Balazy, MD CV 55-0001 through 55-0006 | | | | | |
| 56 | | Glenn Flores, MD CV 56-0001 through 56-0043 | | | | | |
| 57 | | David Glaser, MD CV 57-0001 through 57-0006 | | | | | |
| 58 | | Laurence Huffman, MD CV 58-0001 through 58-0003 | | | | | |

| 59 | | Debbie Morikawa, RN CV<br>59-0001 through 59-0004 | | | | | |
| 60 | | Patricia Pacey, PhD CV<br>60-0001 through 60-0010 | | | | | |
| 61 | | Michael Rauzzino, MD CV<br>61-0001 through 61-0007 | | | | | |
| 62 | | Celina Tolge, MD CV<br>62-0001 through 62-0004 | | | | | |
| 63 | | Harry Walter, DO CV<br>63-0001 through 63-0002 | | | | | |
| 64 | | Helen Woodard CV<br>64-0001 through 64-0003 | | | | | |
| 65 | | Economic Loss Evaluation Summary<br>65-0001 | | | | | |
| 66 | | Economic Drop-down Chart<br>66-0001 | | | | | |
| 67 | | Life Care Plan<br>67-0001 through 67-0008 | | | | | |
| 68 | | Pictures of Dalip Basanti prior to<br>September 2009<br>68-0001 through 68-0002 | | | | | |
| 69 | | ACEP: Pearls and Pitfalls of Spinal<br>Cord Compression<br>69-0001 through 69-0025 | | | | | |
| 70 | | National Clearinghouse Guidelines<br>regarding Diagnostic Imaging Practice<br>for MusculoSkeletal Complaints in | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Adults<br>70-0001 through 70-0015 | | | | | |
| 71 | | Recognizing Spinal Cord Emergencies<br>71-0001 through 71-0008 | | | | | |
| 72 | | Executive Order 13166: Improving<br>Access to Services for Persons with<br>Limited English Proficiency<br>72-0001 through 72-0003 | | | | | |
| 73 | | Anatomical diagrams, models, and/or<br>illustrations, medical literature and<br>diagrams and/or drawings prepared by<br>expert witnesses for illustrative<br>purposes during trial | | | | | |
| | | ~~All items referenced during any<br>depositions taken in this matter~~ | | | | | |
| 74 | | Any document endorsed by Defendant | | | | | |
| 75 | | ~~All items produced pursuant to<br>C.R.C.P. 26~~ | | | | | |
| 76 | | ~~All items exchanged in discovery~~ | | | | | |
| 77 | | Any exhibit needed for rebuttal or<br>impeachment purposes | | | | | |
| 78 | | ~~Any literature listed on any expert's<br>curriculum vitae~~ | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |