IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02765-PAB-BNB

DALIP BASANTI,

    Plaintiff,

v.

JEFFREY METCALF, M.D.,
JASON ROZESKI, M.D.,
PLATTE VALLEY MEDICAL CENTER, and
THE UNITED STATES OF AMERICA,

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on Defendant Jeffrey Metcalf, M.D.'s Motion to Strike Plaintiff's Expert Glenn Flores, M.D. and to Strike Language Opinions by Plaintiff's Experts Laurence Huffman, M.D. and David Glaser, M.D. [Docket No. 164] filed by defendant Jeffrey Metcalf, M.D. Defendants Jason Rozeski, M.D. and Platte Valley Medical Center join in the motion.[1] Docket No. 174; Docket No. 186.

This is a medical malpractice action arising from defendants' treatment of plaintiff Dalip Basanti. Ms. Basanti, a native of India, claims that her primary language is Punjabi and that she was a person with limited English proficiency ("LEP").[2] Docket No.

---

[1] All references to "defendants" in this order, unless otherwise indicated, are to defendants Metcalf, Rozeski, and Platte Valley Medical Center. All references to "defendant" in this order, unless otherwise indicated, are to Dr. Metcalf.

[2] The U.S. Department of Health and Human Services defines LEP persons as those "who are unable to communicate effectively in English because their primary language is not English and they have not developed fluency in the English language."

192 at 1. Ms. Basanti claims that defendants missed opportunities to diagnose a congenital cyst on her thoracic spine, a condition which ultimately resulted in paraplegia of her lower extremities. Docket No. 164 at 1; Docket No. 226 at 4-5. As relevant to this motion, Ms. Basanti alleges that defendants failed to engage a qualified interpreter as required by federal law and that, as a result, defendants were unable to obtain full and accurate information about her condition. Docket No. 226 at 4. Ms. Basanti claims that the failure to engage a qualified interpreter was a cause of her injuries because an earlier diagnosis of her condition would have allowed quicker, more effective treatment and would have prevented paralysis. Docket No. 164 at 1-2. Defendant claims that he was able to effectively communicate with Ms. Basanti regarding her medical condition. Docket No. 226 at 5.

Ms. Basanti has designated Glenn Flores, M.D. as an expert on language issues in healthcare. Docket No. 164-1 at 11, 15. Dr. Flores opines, in part, that the provision of adequate language services "likely would have resulted in timely diagnosis and treatment of her thoracic intradural cyst and in preventing her subsequent cord compression, paraplegia and neurogenic shock." Docket No. 164-1 at 15. Ms. Basanti has designated Laurence Huffman, M.D. and David Glaser, M.D. as experts on the appropriate standard of care regarding the use of interpreters. Docket No. 164 at 12-13. According to defendant, Dr. Huffman and Dr. Glaser both opine that the standard of care required defendants to use an interpreter when treating Ms. Basanti. *Id.*

---

U.S. Dep't of Health & Human Servs., Limited English Proficiency (LEP) Resources Page, http://www.hhs.gov/ocr/civilrights/resources/specialtopics/lep/ (last visited March 27, 2014).

Defendant moves to exclude Dr. Flores' opinions in their entirety and to exclude Dr. Huffman's and Dr. Glaser's language-related opinions. *Id.* at 1.

## I. FEDERAL RULE OF EVIDENCE 702

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[ ] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the specific proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). To perform that function, the Court must "assess the reasoning and methodology underlying the

expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597. It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness' opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

While a plaintiff, as the proponent of the challenged testimony, has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cnty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011); a plaintiff need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

## II. ANALYSIS

### A. Dr. Flores

Defendant's motion seeks to strike Dr. Flores' "opinion in whole," Docket No. 164 at 3, which suggests that defendant failed to review the Court's Practice Standards before filing his motion. Practice Standard III.G concerns motions to exclude expert testimony. *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.G. It requires that a Rule 702 motion "shall identify with specificity each **opinion** the moving party seeks to exclude" (emphasis in original). As the court explained in *Crabbe*, "the Rule 702 determination [is] more *opinion-centric* than *expert-centric*." 556 F. Supp. 2d at 1221 (emphasis in original).

The initial question is therefore whether defendant's motion should be stricken for failure to comply with the Practice Standard. The purpose of the Practice Standard is to focus the analysis on specific opinions. Although defendant fails to cite to any specific opinion contained in Dr. Flores' report, defendant clearly challenges Dr. Flores'

opinion concerning causation. Docket No. 164 at 5, 9. Thus, the Court will construe defendant's motion as challenging Dr. Flores' opinion on causation, specifically his opinion that, had adequate language services been provided, Ms. Basanti's "thoracic intradural cyst" would have been timely diagnosed, effectively treated, and her injuries prevented. Docket No. 164-1 at 15.

### *1. Causation*

Dr. Flores concludes that, as early as 1999, when Ms. Basanti began complaining of back pain, a careful history conducted in her native language "might have elicited early signs and symptoms consistent with a spinal cord mass." Docket No. 164-1 at 15. He also concluded that by March 2009, "it is probable that a careful history and physical examination conducted in the patient's primary language likely would have elicited signs and symptoms consistent with a spinal cord mass." *Id.* Dr. Flores opines that the provision of adequate language services during Ms. Basanti's September 20, 2009 and October 27, 2009[3] visits to Platte Valley Medical Center, would have resulted in timely diagnosis and treatment and prevented cord compression, paraplegia, and neurogenic shock. Docket No. 164-1 at 15. Defendant argues that Dr. Flores, a pediatrician, lacks the medical knowledge and training to diagnose Ms. Basanti's medical condition and therefore has no basis for his opinion that the use of a trained interpreter would have positively affected the diagnosis and treatment of Ms. Basanti's cyst. Docket No. 164 at 8-9.

---

[3]Page 15 of Mr. Flores' contains a typographical error concerning the date of Ms. Basanti's second visit to the Platte Valley Medical Center Emergency Department. *Id.* Elsewhere in Dr. Flores' report, the date of Ms. Basanti's second visit is correctly listed as October 27, 2009. *Id.* at 13.

Pursuant to Rule 702, a witness' qualifications are an insufficient foundation, by themselves, to admit expert testimony, *Crabbe*, 556 F. Supp. 2d at 1220,[4] but appropriate qualifications are a threshold requirement which, if not met, requires exclusion of expert opinions. Dr. Flores must "stay[] within the reasonable confines of his subject area." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quotation marks and citation omitted); *see Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1093 (W.D. Okla. 2009) ("[T]he expert's qualifications must be both (i) adequate in a general, qualitative sense (i.e., 'knowledge, skill, experience, training or education' as required by Rule 702) and (ii) specific to the matters he proposes to address as an expert."). "[M]erely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." *Ralston*, 275 F.3d at 970; *cf. In re Cessna 208 Series Aircraft Products Liability Litigation*, 2009 WL 3756980, at *13 (D. Kan. Nov. 9, 2009) ("Where alleged expertise with regard to other aspects of a field gives a proffered expert no special insight into the issues of the case, such alleged expertise does not qualify the witness as an expert.").

Establishing injury causation requires a showing of both general and specific causation. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005). "General causation" refers to whether the accident in question is, in the abstract,

---

[4]As discussed above, even if a witness is qualified to provide expert testimony, the proponent of the witness still has the burden of showing that the expert's testimony is reliable and admissible. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001); Fed. R. Evid. 702, Advisory Committee Notes to the 2000 Amendments ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").

capable of producing the type of injury suffered. *Id.* General causation may be established by such things as epidemiological evidence, *id.*, but an expert is not required to cite published studies "in order to reliably conclude that a particular object caused a particular illness." *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1211 (10th Cir. 2002) (citing *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1209 (8th Cir. 2000)). "Specific causation" refers to whether a particular accident or substance caused the specific injury at issue. *Id.* In the medical malpractice context, specific causation contemplates whether "the defendant's conduct was the probable, not merely a possible, cause of the injury." *See Hernandez ex rel. Telles-Hernandez v. United States*, 665 F. Supp. 2d 1064, 1079 (N.D. Cal. 2009).

Dr. Flores is a professor and Director of the Division of General Pediatrics at the University of Texas Medical Center. Docket No. 192-3 at 2, p. 8:20-23. Dr. Flores lectures throughout the country on language issues in medicine. *Id.* at 3, p. 10:14-17. He has testified before Congress, but, prior to this case, had not served as an expert witness in litigation. Docket No. 192-3 at 11, pp. 183:22-184:12. Dr. Flores admits that the decision as to whether an adult patient requires an MRI of the thoracic spine is outside the scope of his practice. *Id.* at 26, pp. 326:18-327:6. He has never diagnosed a patient with an endodermal cyst in the thoracic spine or a compressive lesion and admits that he would not be competent to work up an adult patient complaining of mid thoracic back pain, numbness, and tingling. Docket No. 164-3 at 4, p. 23:3-21; Docket No. 164-4 at 9, p. 282:3-8. Dr. Flores also testified:

> Q. Can you render an opinion about whether the recorded signs and symptoms for Ms. Basanti were sufficient to diagnose a compressive cord

> lesion before she was first seen at Platte Valley Medical Center on September 20th?
>
> A.  I'm here as a layman's expert, so I can't address that.
>
> Q.  . . . [C]an you tell us whether the recorded signs or symptoms in the Salud records between the first Platte Valley contact and the second on October 27, 2009 were sufficient to diagnose a thoracic compressive lesion? Or is your answer the same?
>
> A.  It's the same answer.  That's not my area of expertise.
>
> \*       \*       \*
>
> A.  . . . So we can't do anything but speculate, because there was no interpreter present.  What I can say is that without an interpreter, there's a very high likelihood that inaccurate history was obtained.  We also know from studies in the literature that one usually can get a diagnosis quicker and more accurately with the use of an interpreter, and I did not see any trained interpreter used in any of the instances of care that I saw recorded in the medical record.

Docket No. 164-3 at 9, p. 143:6-22; *id.* at 11, p. 145:2-11.

Ms. Basanti argues that Dr. Flores is a board-certified pediatrician who is qualified to render an opinion on whether the lack of a trained medical interpreter would have affected diagnosis and treatment of her condition because he is "an expert in language barriers in healthcare[ and] is uniquely qualified to address the ability to obtain a reliable history from an LEP patient."  Docket No. 192 at 9.  Dr. Flores testified that his research showed a higher rate of clinically significant errors occur when an ad hoc interpreter is used in treating an LEP patient as opposed to when physicians use a trained medical interpreter.  Docket No. 192-3 at 23, pp. 310:9-311:5.  Dr. Flores also opined that language barriers "can be a major cause of patient safety incidents and adverse outcomes."  *Id.* at 24, p.316:18-25.  Although Dr. Flores' research findings may be sufficient to establish general causation, Dr. Flores lacks the qualifications to

9

determine whether any failure to use a qualified medical interpreter caused plaintiff's specific injuries. *See Hollander*, 289 F.3d at 1211. The qualifications necessary to evaluate whether defendants appropriately utilized language services are distinct from those necessary to opine as to whether defendants' use of language services would have led to earlier diagnosis or treatment of Ms. Basanti's condition and thereby prevented paralysis. Dr. Flores admittedly lacks expertise and experience treating and diagnosing adults with endodermal cysts in the thoracic spine or compressive lesions. Moreover, Ms. Basanti provides no indication that Dr. Flores has the expertise to determine what additional information may have been necessary to diagnose or treat Ms. Basanti's condition earlier and more effectively. *See Warren v. Tastove*, 240 F. App'x 771, 773 (10th Cir. 2007) (unpublished) ("we require an opining physician to offer an opinion with a reasonable degree of medical certainty; a hunch, even an educated hunch, is not enough"); *Icon Health & Fitness, Inc. v. Nautilus Group*, Inc., 2005 WL 6015496, at *3 (D. Utah Aug. 29, 2005) ("In *Ralston*, a board certified orthopaedic surgeon's expert testimony regarding the performance of a particular procedure was excluded where the proposed expert had never performed the procedure at issue, never researched the procedure, and admitted that she 'knew little – if anything – about the subject.") (citing *Ralston*, 275 F .3d at 969)). The Court will exclude Dr. Flores' opinions, as set forth above, on whether adequate language services would have resulted in earlier diagnosis, more effective treatment, or would have prevented plaintiff's injuries. *See* Docket No. 164-1 at 15.

### *2. Standard of Care*

Defendant challenges Dr. Flores' opinions as to the standard of care on relevance grounds. Docket No. 164 at 5. Specifically, defendant argues that the question of whether plaintiff had a language barrier requiring the use of an interpreter is a factual issue that requires no expert testimony. *Id.* The Court agrees that Dr. Flores' remaining opinions will not assist the trier of fact, but for different reasons.

Under Rule 702, a court must determine whether the proposed expert testimony will assist the trier of fact. *Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). To do so, courts consider, among other things, whether the testimony is relevant. *Id.* "Relevant expert testimony must logically advance a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *U.S. v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (internal quotation marks and citations omitted).

In order to prevail on her theory that defendants are liable for failure to use a qualified medical interpreter, plaintiff must show that defendants' actions breached the standard of care. *Day v. Johnson*, 255 P.3d 1064, 1068-69 (Colo. 2011). Because this case concerns professional negligence, the appropriate standard of care must be established by expert testimony. *See United Blood Servs. v. Quintana*, 827 P.2d 509, 520 (Colo. 1992). Assuming plaintiff can establish that she was LEP, Dr. Flores' opinion that the standard of care requires physicians to use a trained interpreter when diagnosing and treating an LEP patient may assist the jury in determining the

appropriate standard of care on that issue.[5]

However, in order for Dr. Flores' opinion concerning the appropriate standard of care to be relevant, plaintiff must also establish that the failure to use a qualified medical interpreter caused her injuries. *See Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 719 (Colo. 1987); *Whitfield v. S. Md. Hosp., Inc.*, 2014 WL 923255, at *7 (D. Md. March 7, 2014) (even if there was a breach of the standard of care, plaintiffs "still must demonstrate that eliminating Defendants' delay in administering heparin would have made it more likely than not that surgery would not have occurred"). "[I]t is within the province of the fact-finder to determine the relationship between the defendant's negligence and the plaintiff's condition, so long as the evidence establishes 'such facts and circumstances as would indicate with reasonable probability' that causation exists.'" *Sharp*, 741 P.2d at 719 (quoting *City of Longmont v. Swearingen*, 254 P. 1000, 1002 (Colo. 1927)). Plaintiff need not show a triable issue of fact on the issue of causation with absolute certainty; however, "the plaintiff must establish causation beyond mere possibility or speculation." *Id.*

Plaintiff fails to produce evidence that establishes that defendants' alleged failure to use a trained medical interpreter caused her injuries. As noted above, Dr. Flores is not qualified to offer an opinion on specific causation. Moreover, neither Dr. Huffman nor Dr. Glaser makes the causal connection between any misinterpretation of plaintiff's

---

[5]Dr. Flores appears highly qualified to opine as to language issues generally, having conducted research and published several articles on the subject. *See* Docket No. 164-1 at 3-7; Docket No. 192-1 at 30-38. However, as discussed below, this conclusion does not, by itself, establish the relevance of his opinions to the material issues in this case. *See Crabbe*, 556 F. Supp. 2d at 1220.

description of her medical condition and consequent harm. Dr. Huffman testified that "Dr. Metcalf recalled that there were communication difficulties." Docket No. 164-5 at 4-5, pp. 205:25-206:1. Dr. Huffman also indicated that the lack of a medically trained interpreter created a potential for problems and that Dr. Metcalf would have gotten a much more thorough history and possibly better results from a neurologic exam, but admitted that he could not specifically state whether a more thorough history or better exam results would have altered the diagnosis. Docket No. 164-5 at 3, p. 204:2-16. Dr. Huffman ultimately admitted that he had "[n]o way to know" whether the use of a medically trained interpreter would have resulted in more information relevant to diagnosing or treating Ms. Basanti's condition. *Id.* at 6, p. 210:17-25. Dr. Glaser admits that he cannot testify to a reasonable degree of medical certainty that additional history or exam findings would have resulted from Dr. Metcalf's use of a trained interpreter. Docket No. 164-6 at 2, p.213:3-13. Plaintiff has not produced any evidence to show that defendants' failure to use a trained medical interpreter caused her injuries; thus, the jury considering this theory of liability would be forced to speculate on the issue of causation. *See Sharp*, 741 P.2d at 719. Accordingly, given the absence of causation evidence, Dr. Flores' opinions on the appropriate standard of care do not logically advance a material aspect of this case and, as such, will not assist the trier of fact. *See Garcia*, 635 F.3d at 476. The Court will exclude the remainder of Dr. Flores' opinions as irrelevant.

### B.  Dr. Huffman and Dr. Glaser

Defendant challenges Dr. Huffman's and Dr. Glaser's opinion that a trained

medical interpreter was required between Ms. Basanti and defendants. Docket No. 164 at 12. As a threshold matter, defendant fails to attach either expert's report and fails to cite to any deposition testimony where either expert clearly expresses an opinion that the standard of care required the use of a trained medical interpreter. The Court finds that defendant has failed to sufficiently identify the opinions of Dr. Huffman and Dr. Glaser that he seeks to exclude and has failed to provide a sufficient basis upon which to exclude such opinions. The Court will deny defendant's motion to exclude Dr. Huffman's and Dr. Glaser's language-related opinions.[6]

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Jeffrey Metcalf, M.D.'s Motion to Strike Plaintiff's Expert Glenn Flores, M.D. and to Strike Language Opinions by Plaintiff's Experts Laurence Huffman, M.D. and David Glaser, M.D. [Docket No. 164] is **GRANTED** in part and **DENIED** in part as indicated in this order.

DATED March 28, 2014.

              BY THE COURT:

              s/Philip A. Brimmer
              PHILIP A. BRIMMER
              United States District Judge

---

[6]Although defendant failed to properly identify their opinions on this issue, any opinions by Dr. Huffman and Dr. Glaser on the appropriate standard of care for LEP patients must overcome the relevance issues noted above in order to be admissible.